**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE FALCIGLIA,** | ) | |
| **Plaintiff** | ) | **C.A. No. 06-192 Erie** |
| | ) | |
| **v.** | ) | |
| | ) | **District Judge Cohill** |
| **ERIE COUNTY PRISON, et al.,** | ) | **Magistrate Judge Baxter** |
| **Defendants** | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that:

1. The Motion for Summary Judgment filed by Defendants Erie County Prison, Warden James Veshecco, and Deputy Warden Vincent Kinnane, [Document # 24] be granted; and

2. The Motion for Summary Judgment filed by Defendant Canteen Services [Document # 41] be granted.

## II. REPORT

### A. Relevant Procedural and Factual History

On August 22, 2006, Plaintiff, a prisoner formerly incarcerated at the Erie County Prison,[1] filed this *pro se* civil rights action against the Erie County Prison ("ECP") and Canteen Services ("Canteen"). [Document # 3]. Plaintiff subsequently filed an Amended Complaint on January 4, 2007, adding Defendants James Veshecco, Warden at ECP ("Veshecco"), and Vincent Kinnane, Deputy Warden at ECP ("Kinnane"). [Document # 16]. Plaintiff alleges that Defendants violated his constitutional right to "access to the Courts," his Eighth and Fourteenth Amendment "right to a nutritionally adequate medical diet," his "right to be treated impartially and justly and not to be retaliated against," and his "rights under the Americans with Disability Act." (Document # 3, Complaint, at Section III; Document # 16, Amended Complaint, at pp. 1-

[1] Plaintiff is currently incarcerated at the Great Meadow Correctional Facility in Comstock, New York.

3). In particular, Plaintiff alleges the following:

(i) Upon arriving at ECP, Plaintiff informed the administration that he had a Federal "Court appointed deadline to meet for a case that was already in the Courts." Nevertheless, Plaintiff alleges that Defendants ECP, Veshecco, and Kinnane refused to give him extra time he needed in the law library to meet a court appointed deadline and, as a result, his case was dismissed. (Document # 3, Complaint, at Section IV, p. 2; Document # 16, Amended Complaint, at p. 2). In this regard, Plaintiff alleges that the prison notary refused to notarize his legal documents "for no reason;" he was only allowed access to the law library one day per week, for ninety minutes; and the Federal cases contained in the law library were outdated and "practically useless." (Id.).

(ii) The second time the notary refused to notarize his legal documents, he was sent to a restrictive housing unit for arguing with the notary, where he spent seven days on twenty-four hour lock down and thirty more days on eighteen hour lock down, without being given a "misbehavior report" or "being found guilty of anything." (Document # 3, Complaint, at Section IV, pp. 2-3; Document # 16, Amended Complaint, at p. 2). He alleges further that, during this the time he was in lock down, he was denied access to the law library, and his lawyer only received one of the three letters Plaintiff allegedly sent him. (Document # 3, Complaint, at Section IV, p. 3).

(iii) He is a "brittle diabetic" and must receive a medically approved diabetic menu, which he alleges he was not receiving at ECP. As a result, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs. (Document # 3, Complaint, at Section IV, p. 3; Document # 16, Amended Complaint, at pp. 2-3).

As relief for his claims, Plaintiff seeks monetary damages, and injunctive relief in the form of an order requiring an upgrade of the law library, an increase in the amount of time prisoners can spend in the law library, and provision of a medically approved diabetic diet.[2]

In conjunction with the filing of his original Complaint in this matter, Plaintiff also filed a motion for preliminary injunction seeking an order requiring ECP to provide him with a medically approved diabetic diet. [Document # 4]. After an initial telephonic hearing was held

2

The Court notes that all of Plaintiff's requests for injunctive relief seek changes to his conditions at the Erie County Prison. Since Plaintiff has since been transferred to Great Meadows Correctional Facility, Plaintiff's requests for injunctive relief are moot.

on this motion on September 8, 2006, Defendant ECP provided this Court with documentary evidence demonstrating that Plaintiff was receiving a medically approved high caloric diabetic diet. (See Document # 19, Exhibit A). As a result, this Court issued a Report and Recommendation on October 10, 2006, recommending that Plaintiff's motion for preliminary injunction be denied. [Document # 6]. This Report and Recommendation was subsequently adopted by District Judge Maurice B. Cohill by Order dated February 12, 2007. [Document # 21].

Defendants ECP, Veshecco, and Kinnane have since filed a Motion for Summary Judgment in response to Plaintiff's Amended Complaint [Document # 24], arguing that: (i) Plaintiff's claim for monetary damages against Defendant ECP is barred by the Eleventh Amendment's grant of sovereign immunity; (ii) Plaintiff's access to the Courts claim fails to state a cognizable claim under 42 U.S.C. § 1983 upon which relief may be granted; (iii) Defendants Veshecco and Kinnane are entitled to qualified immunity with regard to Plaintiff's access to the Courts claim; (iv) Plaintiff has failed to establish that he was denied a diabetic diet in violation of his Eighth Amendment rights; and (v) Plaintiff's Fourteenth Amendment and/or retaliation claim regarding his placement in restrictive housing fails to state a constitutional claim upon which relief may be granted.

Defendant Canteen has also filed a Motion for Summary Judgment [Document # 41], arguing, *inter alia*, that: (i) District Judge Cohill's Order denying Plaintiff's motion for preliminary injunction, based upon this Court's finding that Plaintiff was receiving a medically approved diabetic diet, warrants dismissal of Plaintiff's Eighth Amendment claim; (ii) Canteen is not a "person" subject to liability for damages under 42 U.S.C. § 1983; (iii) Plaintiff's claim against Canteen is based upon the theory of *respondeat superior*, which is not a valid basis for liability under Section 1983; and (iv) Canteen is entitled to qualified immunity.

Plaintiff has filed a response and brief in opposition to each of the pending motions for summary judgment, essentially restating the allegations of his Amended Complaint. [Document

## 48-51]. This matter is now ripe for consideration.

**B. Standards of Review**

**1. Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), *quoting* Lujan v. National Wildlife Federation, 497 U.S. 871 (1990). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by

affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will effect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 “does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions.” Firemen’s Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is “genuine,” i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

**2. *Pro Se* Pleadings**

*Pro se* pleadings, “however inartfully pleaded,” must be held to “less stringent standards than formal pleadings drafted by lawyers” and can only be dismissed for failure to state a claim if it appears “beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” Haines v. Kerner, 404 U.S. 519, 520-521 (1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should be done so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant’s unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. v. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by prisoner may be inartfully drawn and should be read “with a measure of tolerance”); Smith v. U.S. District Court, 956 F.2d 295 (D.C. Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complaint. Gibbs v. Roman, 116

F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63,65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

**C. Discussion**

**1. Sovereign Immunity**

Defendant ECP contends that Plaintiff's claims against it must be dismissed because ECP is entitled to immunity under the eleventh amendment to the United States Constitution. This Court agrees. It is well settled that suits for damages by individuals against state governments or state agencies are barred by the Eleventh Amendment. Chittister v. Dep't of Community and Economic Development, 226 F.3d 223 (3d Cir. 2000). See also Bey v. Pennsylvania Department of Corrections, 98 F.Supp.2d 650, 657 (E.D. Pa. 2000) wherein the court summarized well-established law, observing that:

> [t]he Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, under the Eleventh Amendment, absent express consent by the state in question or a clear and unequivocal waiver by Congress, states are immune from suit in federal court. See Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996).

Id.; see also Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161 (3d Cir. 2002).

No exceptions to Eleventh Amendment immunity are applicable here. The Commonwealth of Pennsylvania has not consented to be sued. Wilson v. Vaughn, No. 93-C.V.-6020, 1996 WL 426538, *1 n.2 (E.D.Pa. July 30, 1996)(citing, 42 Pa. Con. Stat. Ann. §8521(b)). Congress has not expressly abrogated Pennsylvania's Eleventh Amendment immunity from civil rights suits for damages. Smith v. Luciani, No. 97-3613, 1998 WL 151803, *4 (E.D.Pa. March 31, 1998), aff'd, 178 F.3d 1280 (3d Cir. 1999)(Table). Thus, any claims for monetary damages against Defendant ECP must be dismissed. Moreover, since the injunctive relief requested by Plaintiff against Defendant ECP is now moot, Defendant ECP should be

dismissed from this case.

**2. Access to Courts**

Plaintiff claims that Defendants Veshecco and Kinnane, with knowledge of Plaintiff's impending court deadline, violated his constitutional right to access to the courts by not allowing him sufficient time and materials in the law library to meet the deadline, which allegedly resulted in his appeal being dismissed. (Document # 16, Amended Complaint, at p. 2).

According to the documents submitted by Plaintiff in this case, Plaintiff had a motion for reconsideration denied by the United States Court of Appeals for the Second Circuit on October 7, 2005, in a case bearing the caption: "Wayne S. Falciglia v. Westchester County Jail, Medical Dept., AM Nurses Jane Does, Correction Officer John Doe." (See Document # 49, Exhibit 3). Plaintiff was incarcerated at ECP on December 14, 2005. (Id.). Plaintiff claims that, upon his arrival at ECP, he informed Defendants Veshecco and Kinnane that he had a "court appointed deadline to meet for a case that was already in the courts." (Document # 3, Complaint, at Section IV, p. 2). Nevertheless, Plaintiff claims that the Defendants refused to give him any extra time in the law library so he could meet his deadline." (Id.). As a result, his petition for writ of certiorari to the United States Supreme Court was filed out-of-time and was rejected by the Court. (See Document # 49, Exhibit 5).[3]

The constitutional right of prisoners to "adequate, effective and meaningful" access to the courts is well established. Bounds v. Smith, 430 U.S. 817 (1977). In order to state a claim for a denial of the right of access to the courts, a plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002). See also Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (holding that inmate could not meet the actual injury standard of Lewis v. Casey as a result of the alleged

[3] The Court noted that the petition was due to be filed on or before January 5, 2006, but was not postmarked until January 12, 2006. (Document # 49, Exhibit 5).

interference with legal mail); Lewis v. Cook County Bd. of Commissioners, 2001 WL 435694 (7th Cir. 2001) ("To state a claim for the denial of access to the courts, a plaintiff must plead an injury in addition to the simple denial of access to the courts."). Mere conclusory allegations that an inmate suffered prejudice are insufficient to sustain an access to courts claim. Acre v. Walker, 58 F.Supp.2d 39 (W.D. N.Y 1999). A plaintiff must show actual injury. Lewis v. Casey, 518 U.S. 343 (1996). In particular, the plaintiff must demonstrate that, as a result of the defendant's actions, he lost the ability to present an "arguably actionable claim" against the validity of his sentence under direct or collateral appeal or a claim challenging his conditions of confinement in a civil rights action. Id. at 355. The "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id.

In this case, it is clear that Plaintiff's untimely petition for writ of certiorari was not a direct or collateral appeal challenging the validity of Plaintiff's sentence; however, from the caption of the underlying case, it may be presumed that Plaintiff was appealing a challenge to conditions of his confinement at Westchester County Jail ("Westchester").[4] Thus, the subject matter of the underlying lawsuit appears to have been entitled to constitutional protection. Nevertheless, the question remains whether Plaintiff was foreclosed from pursuing an "arguably actionable claim" as a result of the Defendants' alleged denial of sufficient access to the law library. In this regard, it is not for this Court to determine whether Plaintiff had an arguably actionable claim regarding the conditions of his confinement at Westchester; rather, this Court must determine whether Plaintiff has shown that, but for the denial of sufficient access to the law library which allegedly led to the rejection of his certiorari petition, he had an arguably actionable claim entitled to certiorari review. In order to do this, a review of the considerations

---

4 Plaintiff has failed to identify the nature of the underlying lawsuit for which he was seeking appellate review; however, the identification of Westchester's medical department and nurses as defendants in the case leads this Court to believe that Plaintiff was raising an Eighth Amendment claim of deliberate indifference to his serious medical needs.

governing the Supreme Court's review on certiorari is required.

Rule 10 of the Rules of the Supreme Court of the United States makes clear that "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion," and "will be granted only for compelling reasons." In particular, Rule 10 provides:

> The following, although neither controlling nor fully measuring the Court's discretion, indicate the character of the reasons the Court considers:
>
> > (a) a United States court of appeals has entered a decision in conflict with the decision of another United States court of appeals on the same important matter; has decided an important federal question in a way that conflicts with a decision by a state court of last resort; or has so far departed from the accepted and usual course of judicial proceedings, or sanctioned such a departure by a lower court, as to call for an exercise of this Court's supervisory power;
> >
> > (b) a state court of last resort has decided an important federal question in a way that conflicts with the decision of another state court of last resort or of a United States court of appeals;
> >
> > (c) a state court or a United States court of appeals has decided an important question of federal law that has not been, but should be, settled by this Court, or has decided an important federal question in a way that conflicts with relevant decisions of this Court.
>
> **A petition for a writ of certiorari is rarely granted when the asserted error consists of erroneous factual findings or the misapplication of a properly stated rule of law.**

Sup. Ct. R. 10 (1999) (emphasis added).

In this case, there is no evidence of record indicating that any of the foregoing reasons warranting review were capable of being presented to the Supreme Court. The Order of the Second Circuit Court of Appeals from which Plaintiff sought review merely denied Plaintiff's motion for reconsideration. (Document # 49, Exhibit 3). Thus, it appears that Plaintiff was simply seeking to reargue before the Supreme Court the issues previously presented unsuccessfully to the courts of the Second Circuit. As stated in the highlighted portion of Rule 10, above, such a review on a writ of certiorari is rarely granted. Accordingly, Plaintiff has failed to demonstrate that he had an actionably arguable claim for certiorari review, and Defendants Veshecco and Kinnane should have summary judgment entered in their favor on the

access to courts claim.

**3. Due Process**

Plaintiff alleges that Defendants Veshecco and Kinnane were "both aware that [he] was placed in Restrictive Housing Pod without ever getting a misbehavior report or being found guilty of any infraction." (Document # 16, Amended Complaint, at p. 2). To the extent that Plaintiff is attempting to raise a due process claim, he fails.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court recognized that, under certain circumstances, liberty interests may be created and thus, protected by the Fourteenth Amendment due process clause. However, "these [protected liberty] interests will be generally limited to freedom from restraint which . . . while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes *atypical and significant hardship* on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (emphasis added).

The placement of prisoners into administrative custody or disciplinary confinement is not an event that is "atypical" in the operation and management of a prison, or in a prisoner's service of his sentence. Furthermore, in Sandin, because the plaintiff's sentence to administrative custody did not impose any greater sentence upon him than that imposed by law, nor did it subject plaintiff to any "atypical and significant hardship," no protected liberty interest was implicated. Administrative custody, even up to 15 months, falls within the expected parameters of a prison sentence imposed upon plaintiff by a court of law. Griffin v. Vaughn, 112 F.3d. 703, 708 (3d Cir. 1997). But see Shoats v. Horn, 213 F.3d 140, 144 (3d Cir.2000) (eight years in administrative confinement, implicated a protected liberty interest). Administrative or disciplinary confinement is a sanction not necessarily atypical or "[un]expected" in prison life. Sandin at 486.

In this case, Plaintiff suffered no atypical or unexpected condition of confinement as a

result of being placed in restrictive housing. Thus, Plaintiff has failed to allege a deprivation of any liberty interest sufficient to support a due process violation.

**4. Eighth Amendment Claim**

Plaintiff claims that Defendants failed to provide an "A.M.A. diabetic diet" and, thus, violated his Eighth Amendment right to be free from cruel and unusual punishment. This Court previously concluded that Plaintiff was receiving a medically approved diabetic diet at ECP when it considered Plaintiff's motion for preliminary injunction. (Document ## 4, 6). This conclusion was based upon Defendants' submission of documentary evidence, consisting of diet orders and menus verifying that Plaintiff was being served high caloric diabetic meals and snacks.[5] Defendant Canteen has since submitted the Affidavit of Mary Beth Graml, Food Service Director for Canteen at ECP, certifying, *inter alia*, the following:

> 5. The meals Canteen served the prisoner plaintiff under the Diabetic Diet followed a four-week cycle menu that outlined three full meals, plus three small meal snacks, seven days a week. The Diabetic Diet menu developed for the ECP specifies the provision of between 2,000, 2,400 and 3,000 calories per day, depending on the specific needs of the inmate as determined by the ECP medical department. It is my recollection that the prisoner plaintiff's Diabetic Diet prescription alternated between the 2,400 and 3,000 daily calorie intake categories as the ECP medical department attempted to treat the prisoner plaintiff's specific needs during his incarceration at the ECP.

(Document # 44, Affidavit of Mary Beth Graml, at ¶ 5).

Plaintiff has not submitted any documentary evidence to contradict the overwhelming evidence offered by Defendants on this issue. As a result, this Court has no reason to reconsider its conclusion that Plaintiff was receiving a medically approved diabetic diet at ECP and, thus, Plaintiff's Eighth Amendment claim should be dismissed.

---

[5] These documents have been submitted with the motion for summary judgment filed by Defendants ECP, Veshecco and Kinnane. (See Document # 24, Exhibit A).

## III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1. The Motion for Summary Judgment filed by Defendants Erie County Prison, Warden James Veshecco, and Deputy Warden Vincent Kinnane, [Document # 24] be granted; and

2. The Motion for Summary Judgment filed by Defendant Canteen Services [Document # 41] be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights. See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d Cir. May 8, 2007).

S/Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: August 31, 2007

cc: The Honorable Maurice B. Cohill
United States District Judge